390 A.2d 791

**Edward HOOKS, Appellant,**

v.

**Mary ELLERBE, Appellee.**

Superior Court of Pennsylvania.

Argued March 28, 1978.

Decided July 12, 1978.

Ronald I. Kravitz, Philadelphia, for appellant.

Julian E. Harmon, Philadelphia, submitted a brief for appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

SPAETH, Judge:

This is a child custody case. The child is a little girl—she is now twelve—and the contesting parties are her father and maternal grandmother. The lower court denied the father's petition, and awarded custody to the grandmother. At the least, this award would have to be reversed and the case remanded for further proceedings, for the court did not apply the legal principles that should be applied. However, we have concluded to reverse outright, and award custody to the father.

The father is Edward Hooks. In February 1964 he and Bernice Ellerbe married: Bernice had a son, Derrick, by a prior marriage. Carla, the child whose custody is here at issue, was born on January 24, 1966. In April 1967 Edward and Bernice separated; Bernice took Carla and Derrick, who was then twelve years old, and went to live with her mother, Mary Ellerbe. In January 1976 Bernice died; Carla continued to live with her grandmother. In January 1977 Edward filed a petition asking that he be awarded custody of Carla, as her father.

-1-

In denying the father's petition the lower court stated: "This court has always been guided by one controlling principle in these matters: the benefit, health and welfare of the child." Lower Court Opinion at 3. This is an oversimplified, and incorrect, statement of the principle that the court should have applied.

 It is true, of course, that in a custody dispute *between parents* the court's paramount concern is to determine what would be in the best interest of the child. *Commonwealth ex rel. Parikh v. Parikh,* 449 Pa. 105, 107–8, 296 A.2d 625, 627 (1972); *Cochran Appeal,* 394 Pa. 162, 145 A.2d 857 (1958); *Commonwealth ex rel. Graham v. Graham,* 367 Pa. 553, 80 A.2d 829 (1951); *Commonwealth ex rel. Grillo v. Shuster,* 226 Pa.Super. 229, 312 A.2d 58 (1973). However, when the custody dispute is between *a parent and a third party,* including a relative such as a grandparent, the parent has a prima facie right to custody, which will be forfeited only if convincing reasons appear that the child's best interest will be served by an award to the third party. *In re Hernandez,* 249 Pa.Super. 274, 376 A.2d 648 (1977). *See also Commonwealth ex rel. Williams v. Miller,* 254 Pa.Super. 227, 385 A.2d 992 (1978).

When the judge is hearing a dispute between the parents themselves, the manner of inquiry is structurally relatively simple. The judge has one question to decide: What is in the child's best interest? After hearing all evidence relevant to best interest, the judge must award custody according to whether the evidentiary scale tips to the mother's side, or to the father's [footnote omitted]. When the judge is hearing a dispute between the parents, or a parent, and a third party, the manner of inquiry is more complex. The question still is, What is in the child's best interest? However, the parties do not start out even: the parents have a "prima facie right to custody, which will be forfeited only if "convincing reasons" appear that the child's best interest will be served by an award to the third party. Thus, even before the proceedings start, the

evidentiary scale is tipped, and tipped hard, to the parents' side. What the judge must do, therefore, is first, hear all evidence relevant to the child's best interest, and then, decide whether the evidence on behalf of the third party is weighty enough to bring the scale up to even, and down on the third party's side [footnote omitted]. *In re Hernandez, supra* 249 Pa.Super. at 286, 376 A.2d at 654.

■ Here, the lower court by its own statement did not apply these principles. Instead of recognizing that the father had a prima facie right to custody of Carla, to be forfeited only for convincing reasons, the court treated the father and grandmother as though they were equals—as though each were Carla's parent, and so had an equal burden of proof. The case would therefore at the least have to be remanded for further proceedings with instructions to the lower court to conduct another hearing, and then make an award based upon the applicable principles of law.

-2-

■ As mentioned at the outset, we have concluded to reverse outright, and award custody of Carla to her father; we arrive at this conclusion because we believe the testimony shows that there are no convincing reasons why the father's prima facie right to custody should be held to have been forfeited.

"Under both the statutory and case law, the scope of review in child custody cases is quite broad and, while we cannot nullify the fact-finding function of the hearing judge, we are not bound by a finding which has no competent evidence to support it." *Commonwealth ex rel. Grillo v. Shuster,* 226 Pa.Super. [229], 235, 312 A.2d [58], 62 (1973) quoting *Commonwealth ex rel. Gifford v. Miller,* 213 Pa.Super. 269, 273–4, 248 A.2d 63, 66 (1968). Further we are not bound by inferences or deductions made by the hearing judge from the facts found. *Commonwealth ex rel. Bowser v. Bowser,* 224 Pa.Super. 1, 302 A.2d 450 (1973). *In re Hernandez,* 249 Pa.Super. 274, 289, 376 A.2d 648, 656 (1977).

In concluding that custody of Carla should be awarded to the grandmother the lower court commented that the father "at best could be a part-time parent." Lower Court Opinion at 4. The father is an electronic technician who has been employed by RCA since 1953. He works the night-shift, from midnight until 8:30 a. m. He testified that if he were awarded custody of Carla he would hire a woman to be with Carla when he was not home. Specifically, he suggested the following arrangement: When Carla finished school at 3:00, she should, as always, take the bus home. By the time she arrived home he would be awake. He would spend the afternoon and evening with Carla, and put her to bed at 9:00 p. m. When he left for work at 11:30 p. m., the woman he would hire would be there, to stay overnight while Carla slept, and to put her on the bus to school in the morning. This suggested arrangement does not appear to us to describe the participation of a "part-time parent." [1] The fact that a parent must work is certainly not a factor that may be used to deprive the parent of custody where adequate arrangements have been made for the child's care in the parent's absence. In any case, it may not be said that the father's absence in the morning, and for an hour and a half in the afternoon, is a "convincing reason" for holding the father's prima facie right to custody forfeited.

The most troublesome aspect of this case is the fact that Carla has lived with her grandmother from the time she was less than two years old. Not only does Carla appear to have a good and loving relationship with her grandmother, but all of her friends live in the same neighborhood, she is

---

1. The lower court seemed struck by the fact that on the one occasion that Carla slept at her father's house, she shared a bed with the woman companion. "Although Carla would have a separate bedroom, it is clear that the nature of Mr. Hooks' employment would necessitate the nightly presence of a caretaker with whom Carla would have to share a bed." Lower Court Opinion at 3. It is not "clear" to us that "Carla would have to share a bed"; because the father did not purchase a bed for Carla on the occasion of her one visit this does not show he would not purchase a bed for her if he were awarded custody.

active at the local church, and her step-brother, Derrick, lives "two doors" away and comes by most days to help her with her homework. These facts, coupled with the increasing awareness of the importance of continuity in a child's life, *see Tomlinson v. Tomlinson,* 248 Pa.Super. 196, 374 A.2d 1386 (1977); *Sweeney v. Sweeney,* 241 Pa.Super. 498, 361 A.2d 302 (1976); *Gunter v. Gunter,* 240 Pa.Super. 382, 361 A.2d 307 (1976), might appear to provide a convincing reason for denying the father custody of Carla. This initial conclusion, moreover, is reinforced by the fact that while the mother was alive the father had little or no contact with his family. (He visited 2 to 3 times a year.)

We are nevertheless persuaded that the father should be awarded custody of Carla. The fact that a child has been away from a parent for a long time will not by itself defeat the parent's right to custody. *In re Hernandez, supra; In re: Adoption of Farabelli,* 460 Pa. 423, 333 A.2d 846 (1975); *Commonwealth ex rel. Johnson v. Pinder,* 217 Pa.Super. 180, 269 A.2d 511 (1970); *Commonwealth ex rel. Lovell v. Shaw,* 202 Pa.Super. 339, 195 A.2d 878 (1963). It must be remembered that our primary concern is with the present and the future, not the past. *See In re Leskovich,* 253 Pa.Super. 349, 385 A.2d 373 (1978); *Augustine v. Augustine,* 228 Pa.Super. 312, 324 A.2d 477 (1974); *Commonwealth ex rel. Grillo v. Shuster, supra; Commonwealth ex rel. Shipp v. Shipp,* 209 Pa.Super. 58, 223 A.2d 906 (1966). It is therefore necessary to evaluate all of the circumstances to see if there is a solution that will improve Carla's situation without sacrificing the rights of anyone involved.

It is true that while the mother was alive the father was a less than ideal parent. His explanation, that "I didn't see her as often as I liked to because her mother was possessive", N.T. 22, does not change the fact that from her perspective, Carla has essentially been without a father. However, the situation has changed since the mother's death. Since then, at first the father came to visit Carla every day; but the visits became less frequent, and almost stopped, because of the disagreement over who should have

custody of Carla. Even so, it was as a result of these visits that the father and daughter had the first real opportunity to develop a relationship. The question now is, How should the development of this relationship be continued and expanded?

The lower court said that although custody of Carla was with the grandmother, the father would still be able to visit Carla and maintain a relationship in that way; "even were he to have custody of Carla, [he] would not be able to spend little more appreciable time with his daughter than he does currently." Lower Court Opinion at 4. In the first place, this statement is inaccurate, for it takes no account of the arrangement suggested by the father, under which he could spend most of each afternoon and evening with Carla. In the second place, the court has ignored "[t]he fundamental principle, from which all other principles in custody cases derive, [ ] that a child should grow up as part of its natural family." *In re LaRue*, 244 Pa.Super. 218, 222, 366 A.2d 1271, 1273 (1976).

As mentioned, Carla's relationship with her grandmother is a good and loving one; it should not be severed. However, Carla's grandmother is 66 years old, and despite any qualities she may possess, she is not Carla's parent. Furthermore, it should be possible to maintain both of Carla's relationships—with her father, and with her grandmother—without destroying or preventing either. For example: The father's house is only 10 minutes from the grandmother's. When Carla leaves school at 3:00 why shouldn't she take the bus to her grandmother's house. (She would not have to change schools.) She could play with her neighborhood friends there, and her stepbrother could continue to come by and help her with her homework. Sometime in the afternoon the father could pick Carla up and bring her home. How much time Carla, and her father, should spend at the grandmother's house is something that everyone—the father, the grandmother, and Carla—should be allowed to work out for themselves; no doubt the arrangement might change over time. It may be hoped that this could be done

without resort to the lower court, but if necessary, resort could be had.

An arrangement along these lines would avoid an "uprooting" and a severance of ties, so properly feared by the lower court, and would allow Carla and her father to develop the relationship they have never had; if they don't do it now, they probably never will.

In this regard, we are aware that Carla expressed a clear preference to remain with her grandmother. This expression, however, is not dispositive:

It is true that a child's stated preference may be sufficient to support a conclusion that a change of custody is warranted. *Carlisle Appeal*, 225 Pa.Super. 181, 310 A.2d 280 (1973). It is also true that as a child grows older more weight should be given to the child's preference. *Tomlinson v. Tomlinson*, 248 Pa.Super. 196, 374 A.2d 1386 (1977); *Williams v. Williams*, 223 Pa.Super. 29, 296 A.2d 870 (1972). However, a court must not simply accept the child's statement of preference; instead the court must critically examine the reasons underlying the child's statement, for a too ready acceptance of the statement would be in effect an abdication by the court of its responsibility to decide for itself what will be in the child's best interest. *Shoup v. Shoup*, 257 Pa.Super. 263, 390 A.2d 814 (1977, Dissenting Opinion at 266 (1978)).

Carla explained that she would prefer to live with her grandmother because she would be closer to her brother, her friends, N.T. 79, and her church activities, N.T. 81; because she has a cousin who lives near her father, with whom she doesn't get along very well, N.T. 79; and finally, because when she slept at her father's she had to share a bed with "Miss Pierce," N.T. 78. These reasons are all appropriate, but none is especially compelling; they rather reflect a natural apprehension at the possibility of change. As indicated above, arrangements may readily be imagined that would allay this apprehension, and permit Carla to maintain her relationship with her grandmother. The deep affection established between Carla and her grandmother is not likely

to diminish because they spend less time together; they have already developed a good and loving relationship; now it is Carla and her father who must be given the opportunity to do the same.

The order of the lower court is reversed and the case is remanded with instructions to enter an order awarding custody of Carla to her father.

HOFFMAN, VAN der VOORT, and HESTER, JJ., dissent.