466 A.2d 152

**Donald C. BROOKS**

v.

**Clelia BROOKS, Appellant.**

Superior Court of Pennsylvania.

Submitted May 31, 1983.

Filed Sept. 16, 1983.

Daniel J. DiGiacomo, Philadelphia, for appellant.

Albert Momjian, Philadelphia, for appellee.

Before ROWLEY, WIEAND and CIRILLO, JJ.

CIRILLO, Judge:

This is an appeal from an order of the Court of Common Pleas of Montgomery County dated July 22, 1981, awarding custody of the parties' two minor children, Donald Jr. and Stephanie Kara, to their father, appellee Donald C. Brooks, and awarding partial custody during certain holiday and vacation periods to their mother, appellant Clelia Brooks.

Donald and Clelia were married in Florida in 1968 and resided there until 1980. Donald Jr. was born on January 20, 1969, and Stephanie Kara was born on June 12, 1972. Mr. Brooks was employed as a maitre'd at the Diplomat Hotel in Hollywood, Florida. Mr. Brooks subsequently left his job at the Diplomat to become a manager at a Holiday Inn. Mr. Brooks also worked as a carpenter for a time and returned to the employ of the Diplomat Hotel. In January 1980 Mr. Brooks accepted a position as catering director at the Fairmount Hotel in Philadelphia. The salary of $78,000 offered by the Fairmount was almost triple Mr. Brooks' salary at the Diplomat. Mr. Brooks discussed the move to Philadelphia with his wife, and the couple came to Philadelphia on two occasions to search for an appropriate residence. They found a suitably large house in Elkins Park. However, the parties decided that it would be best that the children finish the school year in Florida. Donald, therefore, moved to Philadelphia alone and began work at the Fairmount in early January, 1980. It was planned that at the end of the school year Clelia and the children would join Donald in Philadelphia.

During the five months between January and June, 1980, Mr. Brooks kept in contact with his family through frequent telephone calls and he traveled to Florida in May to attend Stephanie Kara's first Holy Communion. At the end of the school term in early June, Mr. Brooks attempted to telephone his family on numerous occasions, but the line was constantly busy. Unable to reach his family by telephone, Mr. Brooks took the next available flight to Florida. Mr. Brooks arrived at the family home in Florida at 1:30 a.m. and found the children, then ages 8 and 11, at home alone. Mr. Brooks took the children to his hotel and when he later spoke to Mrs. Brooks, she informed him that she was seeing another man and that she did not want to move to Philadelphia. Mr. Brooks brought the children back to Philadelphia with him. Mr. Brooks kept in contact with his wife by telephone during the next two months.

During the summer of 1980, Mr. Brooks and the children resided in a suite at the Fairmount Hotel. The children attended a day camp at Friends Central School. When Mr. Brooks was working, the children were cared for by a babysitter, Miss Cheryl DiPrimio, the daughter of Mr. Brooks' secretary.

In mid-August, 1980 Mrs. Brooks came to Philadelphia and the family moved into the house in Elkins Park. However, on September 23, 1980, without notice, Mrs. Brooks left the house abruptly and returned to Florida. In Florida, she lived with the man with whom she had the affair. Mrs. Brooks later called her husband and informed him that she intended to stay in Florida. Mr. Brooks then hired Miss DiPrimio as a full time live-in housekeeper and babysitter. Miss DiPrimio was paid $100 a week and provided with room and board. In October, 1980, Mrs. Brooks had herself admitted to a Florida hospital for psychiatric care. Mrs. Brooks stayed in the hospital for approximately three weeks.

Mr. Brooks remained in telephone contact with his wife during the fall of 1980, but Mrs. Brooks did not see him or the children during that time. However, in early February,

1981, Mrs. Brooks arrived unannounced at the Elkins Park home. Mr. and Mrs. Brooks had dinner on the evening of her arrival and she expressed a desire to reconcile. However, Mr. Brooks felt it was then too late for a reconciliation. The next day, after Mrs. Brooks verbally abused Miss DiPrimio in front of the children, Mr. Brooks took her to the airport and sent her back to Florida. Mrs. Brooks returned to the Elkins Park home the next day, accompanied by her parents. They demanded to be admitted, but Miss DiPrimio, who was at home alone with the children, refused to open the door and called the police. On February 6, 1981, a hearing was held before the Honorable Mason Avrigian and temporary custody of the children was awarded to Mr. Brooks. On July 22, 1981, after a hearing, the Honorable Lawrence A. Brown awarded custody to Mr. Brooks and partial custody to Mrs. Brooks. Mrs. Brooks was awarded custody of the children for a portion of each Christmas and Easter holiday period and for six weeks each summer. Mrs. Brooks' partial custody was ordered to take place at the home of Mrs. Brooks' parents in Florida. Mrs. Brooks filed the instant appeal.

At the outset, we note that the primary consideration in a custody dispute between parents is the best interest of the child, including the child's physical, intellectual, emotional and spiritual well-being. *Commonwealth ex rel. Newcomer v. King*, 301 Pa.Super. 239, 447 A.2d 630 (1982). On appeal, our scope of review in custody cases is of the broadest type.[1] *Commonwealth ex rel. Pierce v. Pierce*, 493 Pa. 292, 426 A.2d 555 (1981); *Commonwealth ex rel. Newcomer v. King, supra.* That is not to say that we can nullify or usurp the fact-finding function of the trial judge. *Commonwealth ex rel. Michael R. v. Robert R.R.*, 314 Pa.Super. 335, 460 A.2d 1167 (1983); *Commonwealth ex rel. Newcomer v. King, supra.* We must defer to the trial

1. We recognize that the issue of the proper scope of review applied in custody cases is presently before our *en banc* Court in the case of *IN RE Donna Williams*, No. 674 Pittsburgh 1981 (J. 903/83), argued May 10, 1983; however, the exercise of a different scope of review in this case would not affect the result.

court's findings of fact and reverse only where in making the finding the trial court has abused its discretion. *Commonwealth ex rel. Newcomer v. King, supra.* However, we are not bound by the deductions and inferences made by the trial judge from the facts he has found. *Commonwealth ex rel. Michael R. v. Robert R.R., supra.* We must exercise independent judgment based on the evidence and make such an order on the merits of the case as to do right and justice. *Commonwealth ex rel. Pierce v. Pierce, supra; Commonwealth ex rel. Newcomer v. King, supra.*

Appellant raises numerous issues on appeal. First, appellant claims that the trial court erred in basing its custody award on appellant's past conduct and not on her present condition. Specifically, appellant contends that the trial court put too much emphasis on her past meretricious relationship and her past emotional and psychiatric problems. We disagree.

It is well established that,

> The primary concern in custody matters lies not with the past but with the present and future. *Hooks v. Ellerbe*, 257 Pa.Super. 219, 390 A.2d 791 (1978), reversed on other grounds 490 Pa. 363, 416 A.2d 512 (1980). Facts *as of time of hearing* are the foundation for determination of the court. *Augustine v. Augustine*, 228 Pa.Super. 312, 324 A.2d 477 (1974). Past conduct is not relevant unless it will produce an ongoing negative effect on the child's welfare. *In Re Leskovich*, 253 Pa.Super. 349, 385 A.2d 373 (1978).

*Commonwealth ex rel. Gorto v. Gorto*, 298 Pa.Super. 509, 514, 444 A.2d 1299, 1301 (1982) (emphasis in original). Further, the mere fact that a parent has had a non-marital relationship is insufficient to deny him or her custody of the children. *Commonwealth ex rel. Myers v. Myers*, 468 Pa. 134, 360 A.2d 587 (1976); *L.D. v. B.D.*, 291 Pa.Super. 589, 436 A.2d 657 (1981). Rather, it is the effect of the non-marital relationship on the child which is crucial to the determination of custody. *Commonwealth ex rel. Myers v. Myers, supra.* While not dispositive, a parent's

meretricious relationship is a factor to be considered. *See Rupp v. Rupp*, 268 Pa.Super. 467, 408 A.2d 883 (1979). Such a relationship may reveal something about the person's ability to be a good custodial parent. *L.D. v. B.D.*, *supra*. Nor does a parent's past emotional problems preclude a finding that the child's best interests require that custody be awarded to that parent. *McGowan v. McGowan*, 248 Pa.Super. 41, 374 A.2d 1306 (1977).

■ In the instant case, however, the trial court did not find that appellant's extramarital affair or her past emotional and psychiatric problems precluded her from having custody of the children, nor did the trial court place too much weight on these factors. The trial court did not totally deny appellant custody, but awarded her substantial partial custody.

■ Relatedly, appellant argues that the trial court considered the appellant's alleged responsibility for the break-up of the parties' marriage. In support of this assertion, appellant refers us to page 3 of the trial court's Opinion, alleging that there the court stated its belief that it was too late for a reconciliation between the parties. It is clear that a trial court's opinion as to the responsibility for the break-up of the marriage is irrelevant to the determination of which parent would best serve the children's interests as custodian. *G.J.F. v. K.B.F.*, 284 Pa.Super. 139, 425 A.2d 459 (1981). However, appellant has misread the trial court's Opinion; nowhere in that Opinion does the trial court state its personal view as to responsibility for the break-up of the marriage. On page 3 of its Opinion, the trial court does not state its own belief, but rather, Mr. Brooks' belief that in February 1981 it was too late for the parties to reconcile.

■ Appellant also contends that the trial court improperly considered the relative income of the parties in making its custody decision. In a custody proceeding, the sole permissible inquiry into the relative wealth of the parties is whether either parent is unable to provide adequately for

the child; unless the income of one party is so inadequate as to preclude raising the children in a decent manner, the matter of relative income is irrelevant. *In Re Wesley J.K.,* 299 Pa.Super. 504, 445 A.2d 1243 (1982); *G.J.F. v. K.B.F., supra.* In the present case the trial court did not consider the relative income of the parties in making its custody decision. The trial court said, "Practically, Mr. Brooks has more adequate means of caring for the children. Mrs. Brooks has been receiving psychiatric care since October 1980 and presently is dependent on her parents." (Trial Ct. Slip Op. at 5). The trial court's reference to practical means does not reveal a limitation to financial means, but encompasses a consideration of each parent's ability to meet all the needs of the children, both physical and emotional, on a day to day basis.

 Appellant also argues that the trial court failed to give sufficient weight to the fact that she was the primary parental figure for the children. The role of the primary caretaker is a substantial factor which the trial judge must weigh in adjudicating a custody matter. *Commonwealth ex rel. Jordan v. Jordan,* 302 Pa.Super. 421, 448 A.2d 1113 (1982). However, this is only one factor to be considered. Further, "[A] parent's ability to care for a child must be determined as of the time of the custody hearing, not as of an earlier time." *In Re Custody of Frank,* 283 Pa.Super. 229, 244, 423 A.2d 1229, 1237 (1980). The record reveals that during the thirteen months between June 1980 and the custody hearing, Mr. Brooks spent a substantial amount of time with the children and provided them with love, care and devotion. The nature of the hotel at which Mr. Brooks worked in Florida accounts in part for the fact that he was not as involved as his wife in the upbringing of the children in their early years. Mr. Brooks testified that the Diplomat Hotel in Florida is a resort hotel which required that he work longer hours and frequently at night and on weekends. The Fairmount Hotel, on the other hand, is a center-city hotel which does not often require him to work nights and weekends. Thus, Mr. Brooks has more time to spend

with the children now than he had while in Florida. Mr. Brooks testified that the opportunity to spend more time with his family was one of the reasons that he accepted the job at the Fairmount.

■ Appellant also argues that the trial court did not give sufficient weight to the moral atmosphere of Mr. Brooks' home. Specifically, appellant intimates illicit cohabitation between Mr. Brooks and Miss DiPrimio. The trial court found that there was no relationship beyond that of employer and employee between Mr. Brooks and Miss DiPrimio. Appellant concedes in her brief that there is no proof of impropriety but only the appearance of such. (Brief for Appellant at 25). We have reviewed the record and find it sufficient to support the trial court's finding that there is no illicit relationship between Mr. Brooks and Miss DiPrimio.

Appellant further contends that the trial court failed to consider Mr. Brooks motive in removing the children from Florida. It is clear that,

> When a party, in bad faith, removes a child from another jurisdiction in order to circumvent an adverse custody order of a court in that jurisdiction, our courts have held that such evasion of the law, if proven, should be an important factor when Pennsylvania courts consider the custody dispute. *Commonwealth ex rel. Rogers v. Daven*, 298 Pa. 416, 148 A. 524 (1930); *Irizarry Appeal*, 195 Pa.Super. 104, 169 A.2d 307 (1961).... In ascertaining who would best serve the welfare of the children, the lower court should consider appellee's disrespect for the legal process and evaluate how it bears on his fitness to be awarded custody of the children. *Commonwealth ex rel. Daven v. Smith, supra; Irizarry Appeal, supra.*

*In Re Leskovich*, 253 Pa.Super. 349, 359, 385 A.2d 373, 378 (1978).

■ There is no previous custody order involved in this case. Nor does our review of the record reveal any bad

faith motive to evade the law on the part of Mr. Brooks in bringing the children to Philadelphia from Florida. Mr. Brooks brought the children to Philadelphia after he was unable to reach the family by phone, flew to Florida, and found the children at home alone at 1:30 a.m. At the time Mr. Brooks brought the children to Philadelphia, he hoped to reconcile with his wife and in mid-August, 1980 Mrs. Brooks came to Philadelphia and the family moved into the Elkins Park residence. There is, thus, no evidence in the record of any bad faith motive on the part of Mr. Brooks to circumvent the law by bringing the children to Philadelphia. Nor will we infer any improper motive from Mr. Brooks' consultation with an attorney in August, 1980. This consultation came after a prolonged separation from his wife during which she had an affair with another man.

Appellant also claims that Mr. Brooks made misrepresentations to her about the possibility of a reconciliation between them and the necessity that she assign her interest in their Florida home and the proceeds from its sale to him in order to purchase the home in Elkins Park. There is no evidence in the record to indicate that Mr. Brooks' desire for a reconciliation with his wife was not sincere. Further, it is clear that Mr. Brooks intended the Elkins Park property to be a home for his wife and children. Mrs. Brooks moved into that house with Mr. Brooks and the children in August 1980 but later left and returned alone to Florida.

We have independently reviewed the record and conclude that it is in the best interest of Donald Jr. and Stephanie Kara that they be in their father's custody. Mr. Brooks is the more stable parent and provides the more stable environment for the childrens' growth and development. The record demonstrates that Mr. Brooks is best able to meet the physical, emotional, intellectual and spiritual needs of the children. The record shows that Mr. Brooks is a loving, caring and nurturing parent. Mr. Brooks spends substantially all his non-working time with the children. While Mr. Brooks is sometimes required to work at night, at these times the children are cared for and super-

vised by a full time live-in housekeeper and babysitter, Miss DiPrimio. Further, Mr. Brooks has instructed his staff at the Fairmount Hotel that if any calls come in pertaining to his children, he is to be immediately located and the call put through under any circumstances. Mr. Brooks eats breakfast with the children every morning and supervises their diet and grooming. The children take instructions in the Catholic religion and Mr. Brooks requires that the children go to the library once a week and choose a good book to read. Both Donald Jr. and Stephanie Kara are involved in gymnastics.

Furthermore, Donald Jr. and Stephanie Kara both expressed the preference to remain with their father.

> Although the express wishes of the child are not controlling in custody decisions, they do constitute an important factor which must be carefully considered in determining the child's best interest. The weight to be accorded the child's preference varies with the age, maturity and intelligence of the child and the reasons given for the preference.

*Commonwealth ex rel. Pierce v. Pierce, supra,* 493 Pa. at 299–300, 426 A.2d at 559 (citations omitted).

At the time of the custody hearing, Donald Jr. was 12 years old and Stephanie Kara was 9 years old. The children stated that they preferred to stay with their father because they believed he would take good care of them, help them with schoolwork and take them places. These are sound reasons which evidence an understanding of the gravity of the question and which warrant considerable weight.

■ Appellant asserts that the trial court failed to consider that Mr. Brooks exerted subtle pressure on the children to influence their preference. This Court is aware of the fact that a parent in possession of young children can exert subtle pressure to influence the children's parental preference. *See In Re Leskovich, supra.* The trial court detected no hint of any persuasion and our review of the record reveals none.

 Finally, appellant claims that she should be given custody of Stephanie Kara. Appellant argues that the needs of a nine-year old girl are different than those of a young boy and that it is important that Stephanie Kara have maternal input during her formative years. In child custody proceedings, there is no preference for keeping male children with the father and female children with the mother. *Hugo v. Hugo*, 288 Pa.Super. 1, 430 A.2d 1183 (1981). Mrs. Brooks has been awarded liberal partial custody of the children and she can provide Stephanie Kara with the necessary maternal input at that time. In addition, Mrs. Brooks is also always available to Stephanie Kara by telephone.

 Mrs. Brooks further argues that because Mr. Brooks had permitted a young man in his early twenties to reside at the Elkins Park house, Mr. Brooks' home is an unfit moral environment for a young girl. However, at the time of the custody hearing, the young man had found his own apartment and no longer resided at Mr. Brooks' home. Conditions must be evaluated as they exist at the time of the custody hearing. *In Re Custody of Frank, supra.* Thus, at the time of the custody hearing, the young man did not reside at the Elkins Park home and he had no effect on the fitness of the home for either Donald Jr. or Stephanie Kara.

We have independently reviewed the record and conclude that at this time it is in the best interest of the children that they be in Mr. Brooks' custody.

Order affirmed.

ROWLEY, J., files a concurring statement in which WIEAND, J., joins.

ROWLEY, Judge, concurring:

I join in the order of the court and almost all of the opinion filed with the order.

I do not join, however, in that portion of the opinion on pages 274 and 275 dealing with this Court's scope of review

in child custody cases. That precise issue is presently pending before an en banc panel of this Court. Moreover, the Supreme Court of Pennsylvania in *Commonwealth ex rel. Davenport v. Montgomery County Children and Youth Services,* 501 Pa. 472, 462 A.2d 221 (1983), stated that while our review is to be of the broadest type we are bound by the trial court's findings of fact concerning "the parties emotional feelings and attitudes towards one another." Given this most recent pronouncement of the Supreme Court, it is my understanding that we are *not* to substitute our "independent judgment" for that of the trial court in such matters. To do so would render the trial courts little more than masters in custody cases. Since I am of the opinion that appellate judges are no better equipped to decide such delicate issues than are the trial judges of the Commonwealth, I do not agree that appellate review should be replaced by a re-trial of the case.

Since the record in this case contains evidence supporting the trial court's findings concerning the emotional well-being of the children, I agree that the order should be affirmed.

WIEAND, J., joins in this concurring statement.