J-S55042-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | | |
|---|---|---|---|
| A.S. | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| Appellant | : | | |
| | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| R.G. | : | No. 857 WDA 2019 | |

Appeal from the Order Entered May 8, 2019
In the Court of Common Pleas of McKean County Civil Division at No(s):
165 C.D. 2017

BEFORE:   MURRAY, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    FILED NOVEMBER 15, 2019

Appellant, A.S. ("Mother"), appeals from the order dated May 8, 2019, changing primary physical custody of her biological child, Al.S. ("Child"), born in 2016, from Mother to Child's biological father, Appellee, R.G. ("Father"). After careful review, we affirm.

Mother resides in Port Allegany, McKean County, Pennsylvania, with her boyfriend, Z.E., and Child's two maternal half-siblings, Ai.S. (born 2012) and Aly.S. (born 2010). Mother's Exhibit 1. Mother has a close relationship with her stepmother, who regularly assists Mother with her children and provides necessities like transportation. Trial Court Opinion, filed May 8, 2019, at 2 (not paginated). Mother has "significant mental health issues" and a history of unemployment and drug and alcohol abuse. Id. at 2-3, 9. In 2013, after

_____

[*] Retired Senior Judge assigned to the Superior Court.

the birth of Child's maternal half-siblings but preceding Child's birth, Mother pleaded guilty to aggravated assault, two counts of driving under the influence ("DUI"), and related offenses. In 2017, after Child's birth, Mother pleaded guilty to another DUI, to intentionally possessing a controlled substance by a person not registered, and to depositing waste on highway. Mother served her sentence for her most recent convictions on a part-time basis, reporting to McKean County Jail on weekends.

Father lives in Great Valley, New York, which is 43 miles away from Mother's residence or a driving time of about an hour. Father shares custody of Child's other two paternal half-siblings, C.G. (born 2012) and D.G. (born 2014). Father is carpenter, who built Child's bed by hand, and is a member of the Carpenter's Union, Local #226. Id. at 2-3. "His schedule varies upon work demands and job availability." Id. at 2. He generally works in the warm-weather months, during which his work schedule normally is weekdays from 6:00 A.M. to 4:00 P.M., although he can volunteer for Saturday work shifts, and he is typically laid off in winter. Id. Father has no history of substance abuse or mental health issues and has a "close-knit" family. Id. at 2-3, 9.

Both parents "play[] with and engage[] in age-appropriate activities with Child regularly," such as "reading and coloring." Id. at 3. Both parties are also physically healthy. Id.

Pursuant to an agreement between the parties, the trial court executed a custody order on March 22, 2017, granting primary physical custody of Child to Mother, with Father having partial physical custody. However, during the

period when this order was in effect, Mother would withhold Child from Father "for months on end." Id. at 7.

"Father filed a Petition to Modify [Custody] on August 30, 2018. The parties were unable to reach any agreement at the Family Law Office." Id. at 1. A hearing was held on March 29, 2019. On May 8, 2019, the trial court entered an order changing primary physical custody of Child from Mother to Father. In an accompanying opinion, the trial court considered both the "custody factors" found at 23 Pa.C.S. § 5328(a)[1] and the "relocation factors"

_____

[1] (a) Factors.--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

_____

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

from 23 Pa.C.S. § 5337(h).[2]  Trial Court Opinion, filed May 8, 2019, at 4-12.

On June 7, 2019, Mother simultaneously filed a timely appeal and statement

of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i).[3]

_____

[2]     (h) Relocation factors.--In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

> (1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

> (2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

> (3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

> (4) The child's preference, taking into consideration the age and maturity of the child.

> (5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

> (6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

> (7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

Mother now presents the following issues for our review:

[A.] Did the trial court err by applying the relocation factors to a standard primary custody case such that the overall analysis of relevant factors was skewed?

[B.] Did the trial court abuse its discretion and err by considering the incomes or relative wealth of the parties in the manner it did?

C. Did the trial court err by weighing old convictions against [Mother] in the manner it did?

Mother's Brief at 4-5 (issues re-ordered to facilitate disposition) (suggested answers and unnecessary capitalization omitted).

We begin by acknowledging our scope and standard of review in custody cases:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences

_____

> (8) The reasons and motivation of each party for seeking or opposing the relocation.

> (9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

> (10) Any other factor affecting the best interest of the child.

Id. § 5337(h).

3 On July 29, 2019, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a).

from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

D.K. v. S.P.K., 102 A.3d 467, 478 (Pa. Super. 2014) (quoting J.R.M. v. J.E.A., 33 A.3d 647, 650 (Pa. Super. 2011)).

Mother first[4] contends:

[T]he application of the Relocation factors was sua sponte by the [t]rial [c]ourt, as neither party filed any relocation documents . . .

The result for [Mother] in this matter of the [t]rial [c]ourt's application of the Relocation factors is that the [c]ourt found that they favored the Father, thereby skewing the overall analysis against [Mother].

Mother's Brief at 9-10.

Preliminarily, we observe that the custody factors from 23 Pa.C.S. § 5328(a) and the relocation factors from 23 Pa.C.S. § 5337(h) do not exist in separate vacuums. This Court has repeatedly discussed that these two

---

[4] We note that, although Mother lists three separate claims in her statement of questions involved, Mother's Brief at 4-5, the argument section of her brief is not "divided into as many parts as there are questions to be argued[,]" thereby violating Pa.R.A.P. 2119(a). Mother's Brief at 6-12. Although we have chosen to apply our rules liberally pursuant to Pa.R.A.P. 105(a), we remind Mother and her counsel of the following:

The briefing requirements scrupulously delineated in our appellate rules are not mere trifling matters of stylistic preference; rather, they represent a studied determination by our Court and its rules committee of the most efficacious manner by which appellate review may be conducted so that a litigant's right to judicial review as guaranteed by Article V, Section 9 of our Commonwealth's Constitution may be properly exercised.

Commonwealth v. Briggs, 12 A.3d 291, 343 (Pa. 2011).

statutes intersect, with the polestar of both always being the best interests of the child:

> "Several of the factors of section 5337(h) are encompassed, either directly or implicitly, by the custody factors of section 5328(a)." D.K., 102 A.3d at 476–77. A court should avoid "dissociating the issue of primary custody from the issue of relocation," and should instead decide the two issues together "under a single umbrella of best interests of the children." S.J.S. v. M.J.S., 76 A.3d 541, 550 (Pa.Super. 2013) (quoting Collins v. Collins, 897 A.2d 466, 473 (Pa.Super. 2006) ).

S.S. v. K.F., 189 A.3d 1093, 1098 (Pa. Super. 2018).

"In a custody case where neither parent is relocating, but the children stand to move a significant distance, trial courts should still consider the relevant [relocation] factors of section 5337(h) in their section 5328(a) best interests [custody] analysis." D.K., 102 A.3d at 476. Accordingly, in the current circumstances, where neither parent was relocating but Child could be moving a significant distance, the trial court's consideration of the relocation factors in addition to the custody factors was appropriate.

Mother additionally argues that the trial court should not have considered the parties' relative income. Mother's Brief at 10-11. After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Christopher G. Hauser, we conclude that this issue merits no relief. The trial court opinion appropriately discusses and disposes of that question:

> Th[e trial c]ourt properly considered Mother's financial situation. It is permissible for the [c]ourt to consider the relative wealth of the parties to determine whether either party is unable to provide adequately for the child. Roadcap v. Roadcap, 778 A.2d 687

(Pa. Super. 2001) (citing Brooks v. Brooks, 466 A.2d 152, 156 (Pa. Super. 1983). Where the income of one party is so inadequate that it precludes raising the child in a decent manner, then the parties' financial situations are relevant. Id. Here, Mother reported no income, except for receipt of child support. [Mother's] Ex. 1. The [c]ourt had concerns that her income was not sustainable and that she may have been unable to provide for Child's financial needs. Because Mother's income was so inadequate, the parties' financial situations were relevant and were properly considered, along with all of the other relevant factors.

Trial Court Opinion, filed July 29, 2019, at 2-3 (not paginated).

Our only addendum is that both Mother and the trial court rely upon Roadcap v. Roadcap, 778 A.2d 687 (Pa. Super. 2001). Mother's Brief at 10; Trial Court Opinion, filed July 29, 2019, at 2. We believe that Mother's reliance on Roadcap is misplaced, because the only reason for the change in the custody arrangement in Roadcap was economic, with no other factor contributing to the trial court's decision:

[T]he trial court's specific conclusions as to the necessity for a change of primary custody based on the preferability of [the father]'s place of residence and his financial ability to provide better opportunities constitutes an abuse of discretion. The court has denominated [the mother] as the better parent: she is more available to the children, a critical factor given the court's concerns about [the father]'s delegation of some of his parental duties to his mother; her willingness to cooperate in encouraging the children's relationship with [the father] is remarked upon by the court as is [the father]'s resistance to cooperation in scheduling the children's time. The court has also rejected [the father]'s proposed daycare provider in favor of the one already utilized by [the mother]. In short, there is nothing on the record other than factors determined by economics which would justify the court's decision[.]

778 A.2d at 690 (footnote omitted). In the current action, the comparative finances of the parties was only one of a multitude of factors considered by

the trial court, and, unlike the mother in Roadcap, who had a plethora of factors in her favor when compared to the father, Mother in the current appeal has none.

Finally, Mother maintains that the trial court should not have considered her undisputed criminal history without also considering whether a threat of harm to Child existed. Mother's Brief at 12.

According to 23 Pa.C.S. § 5329:

> Where a party seeks any form of custody, the court shall consider whether that party . . . has been convicted of or has pleaded guilty or no contest to any of the offenses in this section[5] . . . The court shall consider such conduct and determine that the party does not pose a threat of harm to the child before making any order of custody to that party

Consequently, Mother is correct that the trial court should not have considered her criminal history without also considering whether she posed a threat of harm to Child. Nevertheless, we find this error to be harmless, given that, even without considering Mother's criminal record, the custody and relocation factors were overwhelmingly in Father's favor. The factors in Father's favor and against Mother included Mother withholding Child from Father for months, Mother's history of mental health and substance abuse issues, Father's lack of mental health and substance abuse issues, and Father's overall more stable routine. Trial Court Opinion, filed May 8, 2019, at 2-3, 7-9.

---

[5] Mother does not deny that she has been convicted of qualifying offenses under 23 Pa.C.S. § 5329. Mother's Brief at 12.

For the reasons set forth above, we conclude that the trial court did not abuse its discretion in entering the custody order of May 8, 2019. See D.K., 102 A.3d at 478. We therefore affirm the trial court's decision.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/15/2019</u>