## Zummo v. Zummo

*David L. Ladov,* for Pamela S. Zummo.
*Edwin E. Thompson,* for David M. Zummo.

OTT, *J.*, July 8, 1988—

## FACTS

Pamela S. Zummo (mother) and David M. Zummo (father) were married on December 17, 1978, separated August 1987, and divorced April 19, 1988. Three children were born of this marriage, namely Adam, age eight; Rachael, age four; and Daniel, age three. Mother was raised a Jew and has actively practiced her faith since ·childhood. Father was raised Roman Catholic but had attended Catholic services only sporadically. Prior to their marriage, mother and father discussed their religious differences and agreed that any children would be raised in the Jewish faith.

During the marriage, the Zummo family participated fully in the life of the Jewish faith and community. They became members of the Norristown Community Jewish Center in 1983, celebrated Sabbath every Friday night and attended all of the high holiday services as well. In addition, mother and father participated in a social couples' group at their synagogue and joined B'nai B'rith. All three of the children were formally given Hebrew names.

Before the parties separated, the children attended no religious services outside the Jewish faith. Adam will begin preparing for his bar mitzvah this fall. Customary instruction would require attendance at two classes each week after school, participation in Saturday services and attendance at Sunday school. This training will culminate in Adam's bar mitzvah at age 13. Rachael will begin her formal Jewish education and training this fall at Sunday school.

Since separation, father has refused to arrange for Adam's attendance at Sunday school while exercising visitation rights on alternate weekends. Father

also wishes to take the children to occasional Roman Catholic services as he sees fit. Father suggests the children would benefit from a bicultural upbringing and should therefore be exposed to the religion of each parent. Mother opposes visitation by father to the extent it disrupts the formal Jewish training of the children. She further opposes exposing the children to a second religion which would confuse and disorient them.

Mother filed a divorce complaint on July 6, 1987, which included a count seeking confirmation of her custody of the children. The parties have since agreed to share legal custody. They have also agreed that mother should have primary physical custody subject to father's partial physical custody on alternating weekends, as well as certain holidays and vacation periods. To this end, the parties submitted a stipulation and agreement setting forth the nature and timing of father's partial physical custody. By virtue of the agreement, the hearing and this court's order concerned itself only with the issues of to what extent father should be obligated to see to the attendance of the children at Jewish services during his visitation periods and whether father should be permitted to take the children to Roman Catholic services to the extent he attends on his visitation weekends. Subsequent to hearing, it was determined that Adam's Saturday classes could be made up during the week so as not to interfere with father's visitation. Accordingly, the court entered its findings of fact and conclusions of law along with its order on May 6, 1988, which provided in pertinent part:

"(5) Father shall be obligated during his weekend visitations to arrange for the children's attendance at their synagogue's Sunday school, however, father shall not be obligated to arrange for the attendance

of the children at special education classes on Saturdays during his weekend visitations. This provision shall not be construed so as to prevent father from going on trips or attending special functions with his children during his weekend visitation provided, however, he provides reasonable notice to mother in advance thereof.

"(6) Father shall not be permitted to take the children to religious services contrary to the Jewish faith, however, this provision shall not be construed so as to prevent father from taking the children to weddings, funerals, or family gatherings and shall not be construed so as to prevent father from arranging for the presence of the children or events involving family traditions at Christmas and Easter."

Father has appealed this order to the Superior Court, asserting that his constitutional rights and those of his children were violated by the order.

## ISSUE

May a custody/visitation order constitutionally direct that a parent take the children to services of their established religion and further order the parent to refrain from taking the children to services of a different religion?

## DISCUSSION

Father, in his statement of matters complained of pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) states:

"The within appeal is directed toward paragraphs 5 and 6 of the said May 6, 1988, order wherein [father's] rights and those of this (sic) children to attend religious services and or to participate in religious instructions, re any religions '. . . contrary to

the Jewish faith . . .' are unconstitutionally violated and/or interfered with and/or extinguished."

This court's analysis begins with recognition of Article I, section 3 of the Pennsylvania Constitution which provides:

"All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; no man can of right be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent; no human authority can, in any case whatever, control or interfere with the rights of conscience, and no preference shall ever be given by law to any religious establishments or modes of worship."

Pursuant to this constitutional provision, it is axiomatic that this court has neither power nor authority to compel father to attend or not attend any specific religious services and of course the order of May 6, 1988, does not purport to do so. What is at issue, however, is the extent to which father can be compelled to present his children at religious services of the faith of their upbringing, and to what extent he can be precluded from taking his children to services of a different religion which he now chooses to practice.

As in all child custody cases, the paramount consideration of the court must be the best interest and welfare of the children. *Michael T.L. v. Marilyn J.L.,* 363 Pa. Super. 42, 525 A.2d 414 (1987). This standard encompasses not only the physical, intellectual, and moral well-being of the children, but also their spiritual development. *Egelkamp v. Egelkamp,* 362 Pa. Super. 269, 524 A.2d 501 (1987); *Hartman v. Hartman,* 328 Pa. Super. 154, 476 A.2d 938 (1984). Stability and consistency in a child's spiritual inculcation has been recognized as an important factor in

determining the best interests of a child and our Superior Court has concluded that it is beyond dispute that a young child reared into two inconsistent religious traditions will quite' probably experience some deleterious physical or mental effects. *Morris v. Morris*, 271 Pa. Super. 19, 412 A.2d 139 (1979).

The *Morris* case is particularly applicable here. There, the mother, who was a Roman Catholic, married outside her faith. Prior to the birth of their child, the parties had agreed that their children would be raised in the Roman Catholic Church. Following the birth of their child, father converted to the faith of the Jehovah's Witnesses. Following separation, mother retained custody. She later terminated father's visitation privileges upon learning that he was taking their daughter on door-to-door solicitations on behalf of the Jehovah's Witnesses. In affirming the trial court's order which prohibited such conduct, the Superior Court undertook a detailed examination of the sometimes competing interests of the state's determination of the best interests of the child and an individual's right to the free exercise of religion. That court concluded that while the right to hold a specific religious belief is absolutely protected, there exists only a qualified right to act on that belief. In *Morris,* the court had the benefit of expert testimony which predicted that inconsistent religious teachings would probably result in some mental disorientation to the child. In this regard, the Superior Court opined that such deleterious effect was sufficient to override any right that the father had "in draping the whole of his religious beliefs upon the child." 271 Pa. Super. at 34, 412 A.2d at 147.

Though no similar expert testimony was offered in this case, mother did testify as to her opinion and belief that interruption of required religious training

would prevent her children's normal and appropriate development and progression in the Jewish faith, and that their exposure to the contradictory doctrine of Roman Catholicism would confuse and disorient them. We credit her testimony in this regard.*

Though the *Morris* court did not expressly rely upon the parents' original agreement to raise the children as Roman Catholics, it did include such agreement in the factual recitation and the existence of such an agreement or contract has been accorded significance in other custody decisions. See e.g., *Ackerman v. Ackerman, supra.* This court attributes much significance to the similar agreement of the parties in this case. Not only did father acknowledge at trial that he had agreed with mother to raise the children as Jews, he actively participated with mother and the children in the practice and culture of that faith. In contrast to father's acknowledgement that his own practice of Catholicism prior to marriage was sporadic and had been limited essentially to observance of certain traditions at Christmas and Easter, the mother testified at length as to the significant involvement of the entire family in the life, traditions and practices of Judaism prior to separation. We credit the testimony of mother in

---

*It is clear that a court should never attempt to compare, weigh, or evaluate the relative merits of competing religions. *Morris v. Morris, supra; Ackerman v. Ackerman,* 204 Pa. Super. 403, 205 A.2d 49 (1964). It is equally clear, however, that in *Morris,* the Superior Court approved a trial court's role in determining whether there were detrimental effects to the practice of a religion on the development of a child. In this regard, this court takes judicial notice that the practice of Judaism and that of Roman Catholicism can not be squared. To accept and adhere to the teachings of one necessarily requires a rejection of the other.

this regard and conclude therefrom that to expose the children to a competing religion after so assiduously grounding them in the tenets of Judaism would unfairly confuse and disorient them and quite possibly vitiate the benefits flowing from either religion.

Moreover, this court makes little if any distinction between prohibiting the father's affirmative act of taking his children to Catholic services and its direction that the father present the children at their synagogue on Sundays for Sunday school. In custody proceedings, the court can and should impose reasonable conditions or restrictions upon a parent's visitation provided those conditions or restrictions are motivated by the best interests and welfare of the children and are no more intrusive than necessary to accomplish a legitimate objective. *Fatemi v. Fatemi,* 339 Pa. Super. 590, 489 A.2d 798 (1985); *Commonwealth ex rel. Drum v. Drum,* 263 Pa. Super. 248, 397 A.2d 1192 (1979). For the children to realize the benefits and satisfaction flowing from a full participation and involvement in their chosen faith, they must be permitted to participate to the extent required. Mother testified that regular attendance at Sunday classes was a necessary component of and a prerequisite to Adam's bar mitzvah and Rachael's bat mitzvah. Inasmuch as the court provided that father need not comply with the Sunday schedule while taking the children on trips outside the area, an appropriate balance has been struck between the important and appropriate rights of the father to visit and interact with his children, and the children's normal progression with their chosen religion. Accordingly, the appeal should be dismissed.