**Robert L. ROADCAP, Jr., Appellee**

v.

**Pamela J. ROADCAP, Appellant**

Superior Court of Pennsylvania.

Argued April 18, 2001.

Filed June 4, 2001.

Edward R. LeCates, York, for appellant.

Jane M. Alexander, Dillsburg, for appellee.

Before: TODD, OLSZEWSKI, and MONTEMURO,* JJ.

* Retired Justice assigned to Superior Court.

MONTEMURO, J.

¶ 1 This is an appeal from an order awarding primary physical custody of the parties' two minor children to Appellee, Robert L. Roadcap, Jr.

¶ 2 The parties to this custody action were married in Texas in February of 1990 when both were serving in the United States Air Force. Appellee left the armed services shortly thereafter while Appellant maintained her enlistment until a month after the birth of their son on September 22, 1992. At that point, Appellant became a full time homemaker. They remained in Texas for five years, living for part of that time with Appellant's family. The school system in the area where they resided appeared unsatisfactory; therefore, in 1996 they relocated to York County, with which Appellant was familiar, and after renting an apartment for a short period, purchased the marital home. The house contains four bedrooms and two bathrooms, and is surrounded by a yard to be used as a play area. The parties' second child, a daughter, was born on November 14, 1997.

¶ 3 In December of 1998, the parties separated when Appellant relocated to Ohio with the children, joining some people whom she had met on the Internet. When she returned several months later, she moved into a shelter, and then to an apartment occupying the second and third floor of a private house, while Appellee remained in marital home. Appellee's mother began residing with him in February or March of 1999.

¶ 4 Appellee is employed full time as a computer consultant earning $60,000 per year, and travels to North Carolina for work at least two or three days a month. Appellant is unemployed, but attended school part time when the custody hearing

was held, and was planning to become a full time student in the fall of 2000. However, she does not have a car or driver's license, and transportation is often difficult. For medical appointments, Appellee's mother picks up the child and takes him or her to the doctor's office, where Appellee meets them.[1] Appellant does not attend these sessions. While Appellant is in school, the children are placed with a daycare provider.

¶ 5 Appellee filed a Complaint for Custody in December of 1998. After a relocation hearing denying Appellant the right to move permanently with the children to Ohio, the parties submitted to conciliation which proved unsuccessful. Finally, custody hearings were held before the trial court, and the instant order, which contains 12 pages of instructions on the particulars of the award, was entered. This appeal followed.

¶ 6 Appellant presents one issue on appeal contesting the propriety of the trial court's award of primary custody to Appellee.

¶ 7 The scope of appellate review in custody cases has consistently been defined by our Supreme Court as very broad. *Charles v. Stehlik,* 560 Pa. 334, 744 A.2d 1255, 1257 (2000). "Nonetheless a broad scope of review should not be construed as providing the reviewing panel with a license to nullify the factfinding functions of the court of the first instance." *Id.* (quoting *Albright v. Commonwealth, ex rel Fetters,* 491 Pa. 320, 421 A.2d 157, 158–59

(1980)). As an appellate court, we "are empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion." *McMillen v. McMillen,* 529 Pa. 198, 602 A.2d 845, 847 (1992) (citations omitted). Custody decisions are to be made on the basis of the child's best interests. *Charles, supra,* at 1258 (citation omitted).

¶ 8 The trial court, in an extensive Opinion delivered from the bench, while expressing dismay at some aspects of both parties' behavior, awarded primary custody to Appellee. The explanation given is that his "home is more conducive to giving the children more opportunities than [Appellant's] home is," and that Appellee "also has access to better transportation, which translates to better opportunities than [Appellant] has." (N.T., 8/16/00, at 376.) It is notable that despite Appellee's specific plans for the children's care and supervision during periods when either he or his mother is unavailable, the court ordered that the children remain with the daycare provider Appellant had been using.

¶ 9 Because of Appellant's transportation difficulties, the court found that she was less than meticulous about obtaining medical care for the children, that her residence was less stable than Appellee's as she had not lived there as long as he had lived in the marital residence,[2] and

---

1. Appellant's requests that a doctor be found closer to her apartment have gone unanswered.

2. In its remarks on the necessity for a stable physical environment, the court insinuates a slightly vagabond inclination on Appellant's part which is not supported by the record. The court also voices expectations, in a negative way, that Appellant will relocate in the future, presumably in conjunction with her graduation from school and change in employment status. Such a move should not, at this point, necessarily be regarded as detrimental. That the court should do so after basing its custody determination in large measure on the superior accommodations offered by Appellee's residence is puzzling.

that her move to Ohio showed poor judgment. However, the court also expressed concern that Appellee's mother was performing some of Appellee's parental responsibilities, and that Appellee is a controlling, inflexible and angry person less willing to encourage the children's relationship with Appellant than she is to encourage their relationship with him. The court concluded that in general, Appellant is the better parent, as well as having been the primary caregiver, contrary to Appellee's testimony.

¶ 10 In examining the record and the trial court's assessment of the parties, we too find their qualities and performance as parents to be roughly comparable. They are, as the court found, both fit, but imperfect. The question then becomes whether the court's decision is indeed in the best interests of the children given that, in the final analysis, it is largely based on the parties' financial inequality.

¶ 11 In fact, consideration of all the court's findings of fact, despite its disclaimer, makes clear that the factors dictating the custody award here are strictly economic ones. Appellee has a steady job and thus more money, a driver's license, a car and a house with a yard. Appellant's apartment, although determined to be adequate, has less play space, and she subsists on a combination of G.I. benefits, loans and spousal support. She must also rely on public transportation and the cooperation of Appellee's mother to provide some necessities.[3]

¶ 12 However, the law in Pennsylvania has long been that custody is not to be awarded merely on the basis that "a better home in physical aspects, or a higher standard of living can be provided else-

where." *Commonwealth ex rel. Holschuh v. Holland–Moritz,* 448 Pa. 437, 292 A.2d 380, 384 (1972). Indeed, "[i]n a custody proceeding, the sole permissible inquiry into the relative wealth of the parties is whether either party is unable to provide adequately for the child; unless the income of one party is so inadequate as to preclude raising the children in a decent manner, the matter of relative income is irrelevant." *Brooks v. Brooks,* 319 Pa.Super. 268, 466 A.2d 152, 156 (1983).

¶ 13 Given this standard, the trial court's specific conclusions as to the necessity for a change of primary custody based on the preferability of Appellee's place of residence and his financial ability to provide better opportunities constitutes an abuse of discretion. The court has denominated Appellant as the better parent: she is more available to the children, a critical factor given the court's concerns about Appellee's delegation of some of his parental duties to his mother; her willingness to cooperate in encouraging the children's relationship with Appellee is remarked upon by the court as is Appellee's resistance to cooperation in scheduling the children's time. The court has also rejected Appellee's proposed daycare provider in favor of the one already utilized by Appellant. In short, there is nothing on the record other than factors determined by economics[4] which would justify the court's decision. Accordingly, we reverse and remand for the entry of a custody order consistent with this memorandum.

¶ 14 Order reversed and case remanded.

---

**3.** In fact, Appellee's mother seems to have been both cooperative and understanding in her relationship with Appellant.

**4.** We would, nevertheless, express our hope that Appellant obtain her own transportation at the earliest possible opportunity.