J-S10002-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| NOAH J. MCELROY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ALYSSA B. STARTUP | : | |
| | : | |
| Appellant | : | No. 1686 MDA 2025 |
| | : | |

Appeal from the Order Entered November 5, 2025
In the Court of Common Pleas of York County Civil Division at No(s):
2022-FC-001630-03

BEFORE:  DUBOW, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED JUNE 11, 2026**

Alyssa B. Startup ("Mother") appeals from the November 5, 2025 order entered in the York County Court of Common Pleas that denied Mother's request for primary physical custody of then-five-year-old R.N.M-S. ("Child") during the school year and, instead, granted primary physical custody of Child to his father, Noah J. McElroy ("Father").  Upon review, we affirm.

The following factual and procedural history is relevant to this appeal. Mother and Father are the biological parents of Child.  The parties were once in a romantic relationship and lived together but have never been married. Father also has an older son from a previous marriage ("Half-brother").  The parties separated in March 2022 and Mother moved from York County, Pennsylvania, to Port Jervis, New York, which is approximately four hours away.

In August 2022, Father filed a custody complaint requesting shared legal and primary physical custody of then-two-year-old Child. On March 2, 2023, after a trial, the court awarded Father shared legal custody and shared physical custody of Child on week on/week off basis. The trial court noted that, due to the parties' distant proximity to each other, the court would have to grant primary physical custody to either Mother or Father once Child reached school age.

Mother is self-employed as an esthetician and lives alone with Child in a rental home. Father continues to reside in York County and is employed with the United States Army as a staff sergeant. In March 2023, Father married Melissa McElroy ("Stepmother"), who works remotely as a nurse for CVS Aetna. Father and Stepmother live together in a six-bedroom home with Stepmother's two daughters ("Stepsisters") during the week. Half-brother also lives with Father and Stepmother during the summer.

On March 19, 2025, Mother filed a petition to modify custody requesting primary physical custody of Child during the school year and averring, *inter alia*, that Child will turn five years old in March 2025 and will be eligible to enter kindergarten in either parties' jurisdiction during the next school year. In response, Father filed an answer and counter-petition to modify custody requesting primary physical custody of Child during the school year.

The trial court held a two-day custody trial in October 2025. Mother presented testimony from herself; Kenneth Startup, Mother's father; and Erin Kuttner, Mother's sister. Father presented testimony from himself;

Stepmother; Ashley Weber, Stepmother's mother; Joyce Weber, Stepmother's sister; Michaela Cumor, Stepmother's friend; and Melissa Pallares, Child's former nanny. The court also heard *in camera* testimony from Child.

In its Opinion in Support of Final Order of Custody, the trial court authored a thorough, accurate, and comprehensive summary of testimony which we adopt for purposes of this appeal. *See* Opinion, 11/5/25, at 1-14. In sum, Mother testified that she is self-employed as an esthetician in the Port Jervis tri-state area, earning approximately $35,000 the prior year with a projected increase to $55,000. She explained that she limits her work hours when Child is in her custody. She testified that she has a large extended family nearby, including her sister, father, grandparents, and cousins. Mother stated that she plans to enroll Child at Sussex Christian School, which is a private school in New Jersey that has a tuition cost of approximately $8,000 per year. Mother acknowledged that she has difficulty communicating with Father, and that they primarily communicate through Appclose. She testified that she would like to have primary physical custody of Child during the school year, with Father having partial custody every other weekend.

Ms. Kuttner, Mother's sister, testified that she is an elementary school teacher who is currently on maternity leave. She explained that she lives approximately 15 minutes away from Mother and watches Child several times a week. Ms. Kuttner testified that Mother is "engaged[,] supportive[,] loving[,and] playful" and that Child is academically advanced, despite not being enrolled in kindergarten. N.T. Trial, 10/27/25, at 22. She testified that

her brother has three kids and lives close by, and that the entire family gets together all the time.

Mr. Startup, maternal grandfather, testified that he assists Mother with Child two to three times per week. He described Mother and Child as having a great relationship and described Child as a "sweetheart." *Id.* at 35.

Stepmother testified that she works from home as a registered nurse with flexible hours. She testified that if Father receives primary custody, Child would attend Paradise Elementary public school in the Spring Grove school district. She testified that Child and Stepsisters have a sibling-like relationship and that she loves Child.

Father testified and described ongoing communication difficulties with Mother. He explained that he did not have access to Child's pediatric records due to the Port Jervis office having no patient portal and that he had difficulty getting school information from Sussex Christian Academy. Father explained that he is not in agreement with Child attending kindergarten at Sussex Christian academy due to his trouble communicating with the school and the cost of tuition. He testified that his immediate family is in Indiana, but that Stepmother has a large, engaged local family whom they see often. Father confirmed that he has occasional weekend work obligations but explained that he and Stepmother have never been required to work the same weekend. Father testified that he would like to have primary physical custody of Child during the school year.

Ms. Cumor, Stepmother's friend, testified that Father and Child both have a close relationship with Stepsisters and that Father is a good parent. Ms. Weber, Stepmother's sister, testified that Child and Stepsisters get along well and "love each other like siblings." *Id.* at 59. Ms. Weber, Stepmother's mother, testified that she visits Father and Stepmother's house several times per week. She explained that Father is a very loving and understanding parent and that Stepmother and Child have a very positive relationship. Ms. Pallares, Child's former nanny, testified that Father and Stepmother are great parents.

Child testified *in camera*. He testified that, if he had to choose, he would prefer to live with Father during the school year because he is able to play with LEGOS and use his computer tablet at Father's house.

At the conclusion of the trial, the court considered the 23 Pa.C.S. § 5328 custody factors and awarded primary physical custody of Child to Father. Specifically, the court awarded shared legal custody to both parties; primary physical custody to Father and partial physical custody on alternating weekends to Mother during the school year; primary physical custody to Mother on a two-week on/one-week off basis during the summer months.

Mother timely appealed. Both Mother and the trial court complied with Pa.R.A.P. 1925.

Mother raises the following issues for our review:

1. The trial court erred as a matter of law in applying its finding that "[F]ather's employment situation and financial situation to be more stable" as determinative to its decision when the record is devoid of evidence that [M]other was unable to

provide adequate housing, nutrition, healthcare, or educational continuity for [C]hild.

2. The trial court erred as a matter of law by implicating [M]other's relative financial ability it its finding that "[M]other's plan for education for the child is less sustainable than [F]ather's plan for education for the child."

3. The trial court erred as a matter of law in equating [C]hild's relationship with [Stepsisters] and [H]alf-brother in fashioning an [o]rder which minimizes time with his half-brother and maximizes time with his stepsiblings.

4. The trial court erred as a matter of law by entering an order which fails to maximize time between [C]hild and [H]alf-brother when it was undisputed that [H]alf-brother spends his entire summer and school breaks with [F]ather.

5. The trial court erred as a matter of law in failing to properly consider the availability of the parties' respective extended families, and [C]hild's relationship (or lack thereof) with each party's extended family.

6. The trial court erred as a matter of law in failing to properly consider that [C]hild's medical needs have been primarily if not solely attended to by [M]other in New York State where she resides.

7. As a result of the above errors, the trial court erred in fashioning its final [c]ustody [o]rder by awarding [F]ather majority physical custody

Mother's Br. at 5-6 (reordered for ease of disposition).

This Court reviews a custody determination for an abuse of discretion, and our scope of review is broad. *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014). This Court will not find an abuse of discretion "merely because a reviewing court would have reached a different conclusion." *In re K.D.*, 144 A.3d 145, 151 (Pa. Super. 2016). This Court must accept the findings of the trial court that the evidence supports. *S.W.D.*, 96 A.3d at 400.

Importantly, "[o]n issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses." *K.T. v. L.S.*, 118 A.3d 1136, 1159 (Pa. Super. 2015) (citation omitted). We can interfere only where the "custody order is manifestly unreasonable as shown by the evidence of record." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted). Further, in a custody case, relief is not warranted unless the party claiming error suffered prejudice from the mistake. *J.C. v. K.C.*, 179 A.3d 1124, 1129-30 (Pa. Super. 2018).

Pennsylvania law provides that the trial court is only empowered to change an existing custody order if the modification will "serve the best interest of the child." 23 Pa.C.S. § 5338(a). Indeed, when reviewing child custody matters, our "paramount concern and the polestar of our analysis" is the best interests of the child. *Saintz*, 902 A.2d at 512 (citation omitted). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." *D.K.D. v. A.L.C.*, 141 A.3d 566, 572 (Pa. Super. 2016) (citations omitted). "Common sense dictates that trial courts should strive, all other things being equal, to assure that a child maintains a healthy relationship with both of his or her parents, and that the parents work together to raise their child." *S.C.B. v. J.S.B.*, 218 A.3d 905, 916 (Pa. Super. 2019).

The trial court "shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors . . . which affect the safety of the child," including the factors mandated by the Custody Act. 23 Pa.C.S. § 5328(a). The court must "delineate the reasons for its decision[.]" *Id.* at § 5323(d). Finally, in any action regarding the custody of the child between the parents of the child, there shall be no presumption that custody should be awarded to a particular parent and no preference based upon gender. *Id.* at §§ 5327(a) and 5328(b).

Here, the court analyzed the Section 5328 custody factors and found them all to be neutral with the exception of factor 6, sibling and other familial relationships, and factor 7, the child's preference, which the court concluded favored Father. Trial Ct. Op., 11/5/25, at 15-19. The court found that child has "meaningful relationships" with Stepsisters as well as Half-brother*. Id.* at 17. The court recognized that Child stated a preference to live with Father during the school year, but found that Child's preference lacked a "meaningful basis." *Id.* The court also emphasized that "the parties reside three hours and 40 minutes from each other. Given the distance, it is not practical at this point in time to maintain an equally shared physical custody arrangement during the school year." *Id.* The court found that "both parents are fit parents" but "not[ed] of import" Father's stable employment and finances, Father's plans for Child's education, and Child's sibling relationships when awarding Father primary physical custody of Child during the school year. *Id.* at 19-20.

In Mother's first two claims of error, she avers that the trial court erred when it engaged in an analysis of the parties' relative economic circumstances in making its custody determination. Mother's Br. at 11, 16, 30. Mother argues that the trial court impermissibly placed weight on Father's stable employment and finances as well as Father's education plan for public school which, in contrast to Mother's plan for private school, does not involve a tuition payment. *Id.* Mother argues that the trial court's finding that Father's education plan is "more sustainable" implies that Mother is not going to be able to afford tuition. *Id.* at 30. Mother further argues that this is "in contravention of long-standing case law forbidding a relative comparison of parties' respective financial conditions." *Id.* at 11. Upon review, we discern no error.

We agree that "the law in Pennsylvania has long been that custody is not to be awarded merely on the basis that . . . a higher standard of living can be provided elsewhere." *Roadcap v. Roadcap*, 778 A.2d 687, 690 (Pa. Super. 2001) (citation and internal quotation marks omitted). "Indeed, in a custody proceeding, the sole permissible inquiry into the relative wealth of the parties is whether either party is unable to provide adequately for the child; unless the income of one party is so inadequate as to preclude raising the children in a decent manner, the matter of relative income is irrelevant." *Id.* (citation and internal quotation marks omitted).

Here, the court did not base its custody determination solely on the parties' relative economic circumstances. On the contrary, the court found

that "both parties are fit parents who provide for Child's needs adequately." Trial Ct. Op., 12/18/25, at 2. The trial court explained that in placing weight on Father's employment and finances, it focused on stability rather than economic circumstances. The court considered the fact that Mother is self-employed, does not have stable hours, and does not have someone living in her home that "can provide immediate support" and, in contrast, Father is employed by the United States Army, has stable work hours, and is married. *Id.* While the court did consider Father's employment and financial stability, the court did not directly compare Father and Mother's economic circumstances to make a custody determination. *Id.* As stated above, the court placed weight on Father's stability, Father's education plan, and Child's sibling relationships in making its custody determination and did not rely solely on the parties' finances. Thus, because the trial court did not base its custody determination solely on the parties' relative economic circumstances, we conclude that the trial court did not abuse its discretion.

Likewise, we discern no abuse of discretion in the court placing weight on Father's education plan. In its Opinion in Support of Final Order of Custody, the court found that Father's education plan for public school was more "sustainable" than Mother's plan for private school. Trial Ct. Op., 11/5/25, at 20. While Mother argues that this "directly implicates a comparison of the parties' respective financial circumstances," Mother is unable to cite where in the record the trial court made this comparison. Mother's Br. at 30. Mother further argues that "there is no basis for the court's conclusion that she would

- 10 -

be unable to sustain the private school tuition" but, likewise, fails to cite where the trial court made this finding. *Id.* at 32. Mother's unsupported characterizations of the trial court's findings are insufficient to warrant appellate relief.

In issues 3 and 4, Mother avers that the trial court erred when it fashioned a custody order for Child that minimizes his time with Half-brother while maximizing his time with Stepsisters. *Id.* at 5. Mother asserts that Father only has partial custody of Half-brother, who lives in Indiana, for six weeks in the summer, from June to mid-July. Mother contends that the "net effect of the order is that [C]hild will see [H]alf-brother for, at the most, two weeks during the summer and at Christmas." *Id.* at 25. Mother argues that the court erred when it prioritized Child's relationship with Stepsisters over his relationship with Half-brother. *Id.* Mother's argument lacks merit.

It is well-settled that "the policy in Pennsylvania is to permit siblings to be raised together, whenever possible[.]" *Johns v. Cioci*, 865 A.2d 931, 942 (Pa. Super. 2004). "Absent compelling reasons to separate siblings, they should be reared in the same household to permit the continuity and stability necessary for a young child's development." *Id.* (citation and internal quotation marks omitted). Notably, "[t]his policy does not distinguish between half-siblings and siblings who share both biological parents." *Id.*

Here, the court fashioned a custody award that would maximize Child's time with Half-brother as well as Stepsisters. The court considered the fact

that, during the school year, Stepsisters spend four weekends out of every month with their biological father. The court opined:

> [Mother]'s suggestion that [Father] receive custody solely during weekends and some holidays during the school year would utterly deprive Child of any meaningful sibling-like contact with [Stepsisters]. Given this, as well as the fact that Child would not be spending significantly more time [with] [H]alf-brother, an extra one-third (1/3) of his summer vacation, and that [Mother] has no custody or other sibling-like relationships in her proximity, this factor favored [Father] in making this [c]ourt's custody arrangement.

Trial Ct. Op., 12/18/25, at 4. As the court fashioned a custody award that would maximize time with all of Child's siblings, we discern no error. Moreover, while Mother argues that stepsiblings and half-siblings should receive different considerations under the Custody Act, she fails to provide any legal authority to support this proposition. Accordingly, this issue lacks merit.

Mother's remaining issues all raise challenges to the weight of the evidence and fail to garner relief. In accordance with our well settled standard of review, we defer to the trial court on issues of weight and credibility. The trial court has authored a comprehensive, thorough, and well-reasoned opinion, including a summary of testimony, and has engaged in an analysis of each of the Section 5328 custody factors and made specific findings regarding each factor, which the record supports. After a thorough review of the parties' briefs, the applicable law, and the trial court's Opinion in Support of Final Custody Order, we conclude that there is no merit to the remaining issues that Mother has raised on appeal and, thus, discern no abuse of discretion.

Accordingly, we adopt the trial court's analysis as our own and affirm on the basis of the trial court's November 5, 2025 opinion. See Trial Ct. Op., 11/5/25, at 1-21 (relaying the relevant factual and procedural history, providing an accurate summary of the evidence, considering the Section 5328 custody factors, and finding that it was in Child's best interest to award Father primary physical custody of Child during the school year).

In sum, the trial court did not err when it entered the November 5, 2025 custody order after considering the Section 5328 custody factors. The trial court did not err when it placed weight on Father's employment and financial stability, Father's education plan, and Child's relationship with his siblings. Moreover, Mother's challenges to the weight of the evidence fail to garner her relief. The record supports the trial court's findings and, therefore, we discern no abuse of discretion.

All parties are instructed to attach a redacted copy of the November 5, 2025 opinion to all future filings.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 06/11/2026

- 13 -